# THE SUPREME COURT

OF

# THE STATE OF MISSOURI,

MARCH TERM, 1856, AT ST. LOUIS.

[CONTINUED FROM VOL. XXII.]

---

NELSON, Defendant in Error, v. BROWN, Plaintiff in Error.

1. Every court has exclusive control over its own process. Where, there-
fore, an execution issued out of the circuit court of St. Louis county, upon
a judgment of said circuit court, and a sale of real estate was made by the
sheriff, and a deed executed by him to the purchaser; *held*, that the defend-
ant in the execution might, by motion in the circuit court, have such sale
set aside for irregularity; he is not compelled to resort to a proceeding in
the St. Louis Land Court.

2. The filing of a writ of execution, without any endorsement upon it show-
ing the manner in which it has been executed, does not amount to a *return*
of the writ.

3. Although, regularly, motions to set aside proceedings under an execution
should be made during the return term of the writ, yet where, by authority
of court, the return of the writ is made at a term subsequent to the return
term, the court may, at such subsequent term, entertain a motion on the
part of the defendant in the execution to set aside the proceedings under
the execution for irregularity.

4. Although mere inadequacy of price will not of itself justify the setting
aside of a sheriff's sale, yet where that inadequacy is *gross*, there must be

2—VOL. XXIII.

a strict regularity in the proceedings ; hence where real estate, consisting of two separate parcels of land, worth $4000, was struck off to the plaintiff in the execution, one lot for five dollars, and the other for seven dollars, *or as much as the expenses of the sale, together with the clerk's fees for issuing the execution would amount to*—it being the understanding between the deputy sheriff making the sale and the bidder that the amount should be increased or lessened to just the amount of the expenses of the sale including the clerk's fees as above—it not appearing that the defendant in the execution was privy to its levy or to the sale ; *held,* that the sale and the sheriff's deed, made in pursuance thereof, should be set aside for irregularity.

## Error to St. Louis Circuit Court.

The facts of this case, so far as it is necessary to set them forth, are as follows : Nelson, the defendant in error, obtained a judgment in an action of replevin, against Brown, plaintiff in error, in the St. Louis Circuit Court, for one cent damages and costs. The date of this judgment is January 20th, 1851. On the 22d day of March, 1854, an alias execution issued upon this judgment, returnable to the April term of said court. On the 24th of January, 1855, during the November term, 1854, of the Circuit Court, the sheriff returned said execution to the clerk's office of said court with his return endorsed in the following words, viz : " By authority of the court, I do hereby make the following as a correct return on the within writ : Made by sale of real estate nine dollars, which pays expenses of sale and fee of clerk, Hammond. No goods, chattels or real estate belonging to the defendant found in my county whereon to levy and make the balance of costs or any part thereof. January 24, 1855. John M. Wimer, late sheriff."

At the same November term of said court, on the 5th day of March, 1855, Brown, defendant in the execution, made a motion to set aside the sale of his real estate made under the above execution, setting forth various reasons, of which the following only need be stated, viz : " 3d. Because the sheriff of St. Louis county never, in any manner, called upon the defendant for payment of said execution, or informed said defendant that he had such an execution for collection." " 8th. Because the

Nelson v. Brown.

sale was irregular, void and oppressive, inasmuch as the prop-
erty sold was worth at least $4000, and was in fact sold for
nine dollars ; that the property consisted of two parcels, and
was sold in one mass ; that it might have been divided, but
was nevertheless sold in a lump." "10th. Because the said
sale of real estate was in other respects irregular, fraudulent
and void and oppressive."

This motion was supported by the affidavit of Brown, plain-
tiff in error. It was afterwards, at the April term, 1855,
changed into a rule to show cause, &c., of which Nelson had
due notice.

Nelson filed, April 28th, 1855, his written answer to the or-
der to show cause, setting forth, 1st and 2d, that the Circuit
Court has no jurisdiction of the cause, the title to real estate
being involved ; 3d, that there is a defect of parties, inasmuch
as the sheriff is charged with wrong, and is not made a party
to the rule to show cause ; 4th, that the proceedings on the
part of Brown are erroneous," &c. Nelson also sets forth in
his answer that his purchase at the sheriff's sale was legally
and fairly made ; that the sheriff acted fairly and legally in all
his acts, &c.

The cause was submitted to the court at the April term,
1855, upon testimony given by the respective parties. The
sheriff's deed to Nelson, dated May 6th, 1854, was given in
in evidence ; also the circumstances attending upon the levy of
the execution, and the sale thereunder ; the value of the real
estate sold was also shown to be $4000.

John H. Watson testified as follows : " I was a deputy sher-
iff under John M. Wimer, on the 3d day of May, 1854, and
prior to that time. I attended to and made the sale of the land
in question by virtue of the execution. I always attended to
the sales when Mr. Wimer was absent. I sold the first lot de-
scribed in the advertisement, and struck it off to Mr. Nelson, the
plaintiff in the execution, for the sum of five dollars. I sold
the second lot described in the notice, and struck it off to Mr.
Nelson for the sum of seven dollars, or as much as the expen-

ses of the sale, together with Mr. Hammond the clerk's fees for issuing the execution would amount to. Mr. Nelson bid seven dollars on the second lot and I struck it off to him at that price, but with the understanding between him and myself that the amount should be increased or lessened to just the amount of the expenses of the sale, including the clerk's fees as above. Mr. Nelson had told me, prior to the opening of the sale, that he would bid only enough to pay the expenses of the sale and the clerk's fee for issuing the execution."

Harvey Douglass testified as follows : " The execution in this case, upon which the sale of the real estate took place, was in my hands for collection as one of the deputies of John M. Wimer, sheriff of St. Louis county. I was a deputy sheriff under him. I think I have seen Mr. Brown once before, but am not entirely certain. I saw a man that looks like him, and I believe him to be the man, at his house in this county. I called there with the execution, and asked the man I saw if he was the defendant, Henry Brown. He said, yes. I demanded payment, and he replied that he was poor and had nothing and could not then pay it, but that he would be up in a short time and do so." Cross-examined on the part of Brown : " It was just at evening when I was at Mr. Brown's house. At this distance of time I am not willing to swear that this [referring to defendant who was in court] is the man I saw there, but I think it is the man."

Plaintiff in error, Henry Brown, then showed that he had a brother who resembled him so nearly that most persons would take them for the same person ; that this brother was living at the house of Mr. Henry Brown, at the time the deputy sheriff Douglass called there.

The court discharged the rule and gave judgment against defendant (Brown) for costs.

The case is brought here by writ of error.

*Bland & Coleman*, for plaintiff in error. I. The application which was made in the court below, to set aside the sale of the real estate of the plaintiff in error, was properly made

in such court, upon principle and authority : 1st. Because such sale was made by virtue of the process of said court, issued upon the judgment of said court. 2d. Because such sale was made by one of the ministerial officers of said court. 3d. Because such court possessed entire and exclusive control over its own records and proceedings, and full power to correct the irregularities of its ministerial officers, in the execution of its process. (Neal v. Stone, 20 Mo. 294–6 ; Groff v. Jones, 6 Wend. 522 ; Hubert v. McCullum, 6 Ala. 221 ; Mobile Co. v. Moore, 9 Porter, 679 ; Doy v. Graham, 1 Gilman, 435 ; Nesbitt v. Dallam, 7 Gill & Johns. 494.)

II. Such application was made within proper time ; it was made within a "convenient" and "seasonable" time. (6 Ala. 221 ; 1 Gilman, 435 ; 7 Gill & Johns. 494 ; McKinney v. Scott, 1 Bibb, 155 ; Harrison v. Rapp, 2 Blackford, 1 ; Clamorgan v. O'Fallon, 10 Mo. 112 ; Mead v. Matson, 9 Mo. 782 ; Rector v. Harth, 8 Mo. 448 ; R. C. 1845, p. 831, sec. 8.) The giving of a deed by the sheriff does not prevent the court granting the relief desired ; were it so, such relief could seldom be obtained, as the sale and giving of the deed are usually *concurrent* acts. (Mobile Co. v. Moore, 9 Porter, 679 ; 10 Mo. 212 ; 8 Mo. 448. See also Doy v. Graham, 1 Gilman, 435.)

III. The application which was made to set aside such sale, should have been granted ; and the refusal of the court below to do so was erroneous. If a purchaser of real estate at a sheriff's sale be the execution plaintiff, he is considered a purchaser, with full notice, and accountable for all irregularities. (Harrison v. Rapp, 2 Blackf. 1 ; Sunands v. Coltin, 2 Caines, 61.) 1. Said sale was unjust and oppressive, sacrificing a large amount of property for a nominal sum, the affirmance of which, by a judicial tribunal, would sanction the cupidity, avarice and trickery of the defendant in error and his coadjutor. A sale will be set aside where the property has been sold at an inadequate or ruinous price. (Reynolds v. Nye, Freeman's Ch. R. 462.) 2. An "understanding" was agreed

upon and carried out between the defendant in error and the officer making the sale, fraudulent and corrupt in its character, destructive of the interests of the plaintiff in error in its tendency, and subversive of all the safeguards which should surround such sales. Where the validity of a sheriff's sale on execution is in question, all that was said or done by the purchaser, to prevent others from bidding, may be given in evidence. (Hoffman v. Strohecker, 9 Watts, 183.) 3. Because the bid of the defendant in error, at the sale, was so vague and uncertain in its character, as really to amount to no bid at all, being "for the sum of seven dollars, or as much as the expense of the sale, together with Mr. Hammond the clerk's fee for issuing the execution would amount to," more or less. 4. Because the whole case establishes a fraudulent design on the part of defendant in error to purchase the property in question at a price far below its actual value, and the accomplishment of such design by the various means employed by him. A sale will be set aside where there is any collusion or contrivance to enable the purchaser to obtain the property below its value. (Neal v. Stone, 20 Mo. 294.) And a sale will be set aside where the purchaser merely *conceals* facts within his own knowledge, which may influence others in their bids upon the sale. (Hutchinson v. Moses, 1 Browne, 187.) And a sale should always be set aside whenever it satisfactorily appears that the plaintiff in the execution was the purchaser, and that his object in the sale was to obtain the property sold and not a satisfaction of his judgment.

*Hart & Jecko*, for defendant in error. I. A writ of error will not well lie from the action of the Circuit Court below in refusing to set aside the sale by the sheriff to Nelson.

II. If there was any fraud or connivance in the levy, advertisement, sale or purchase of said real estate, the remedy was by a petition in the nature of a chancery proceeding in the St. Louis Land Court, that being a court having exclusive jurisdiction in this county in such cases.

III. The sheriff of St. Louis county, who sold the real es-

Nelson v. Brown.

tate under the execution, should have been made a party, and a failure so to make him a party was manifest error.

IV. The sheriff's returns to both executions are proofs that the defendant had no property of any kind whatever to make the amount of damages and costs or any part thereof, excepting that he sold all the right, title and interest of Brown in and to the pieces of ground before stated; what interest that is, or of what value, nowhere appears; but it does appear that, after being publicly advertised according to law, that is, on the 12th April, 1854, to be sold on the 3d day of May, 1854, and sold on that day in separate tracts, the whole brought nine dollars. Nelson was the last, best and highest bidder at the sale, being the purchaser thereof; and a deed, properly acknowledged in open court and duly recorded, was executed by said sheriff to Nelson for said tract. We say this was sufficient for the court below to refuse to set aside the sale.

V. The motion made by the plaintiff in error came too late. It was after the term when said execution under which the real estate was sold, was returnable, and nearly one year after the deed from Wimer, sheriff, to Nelson was executed. The mere purchase of property at sheriff's sale, for a nominal consideration, raises no equity unless coupled with fraud. We contend that there is no proof of fraud shown in this case. (2 Green, Ch. R. 214; 1 Saxton, p. 1 and 5.)

Scott, Judge, delivered the opinion of the court.

As this was a motion to set aside the proceedings under an execution issued from the Circuit Court of St. Louis county, that court was the proper forum for such an application. Every court has the exclusive control of its process, and no other tribunal can properly interfere with it. (Pettus v. Elgin, 11 Mo. 411; McDonald v. Tieman, 17 Mo. 604.) There is therefore nothing in the point, that, as this proceeding involved the validity of a sheriff's deed, which conveyed title to real estate, it should have been begun in the St. Louis Land Court.

Nelson v. Brown.

It would seem on principle, that motions to set aside proceedings under an execution should be made during the return term of the writ, as after that time the power of the court is at an end. After the term, the proper course is by a bill in the nature of a suit in equity, wherein all the parties interested or concerned are brought before the court. Courts of law now, on motion, give parties the benefit of a writ of error, *coram vobis* or *audita querela*, and those remedies may be prosecuted within the time within which a writ of error may be sued out. But proceedings to set aside the return of final process for irregularity in its execution, must not be confounded with the relief afforded by the writ of error, *coram vobis* or *audita querela*. On such process, executions are frequently set aside, but it is for such irregularities in the previous proceedings in the cause, or for such want of correspondence between the writ and the judgment, as renders it void. It is plain that a writ of error, of any kind, would not lie for acts done by a sheriff in the execution of process entrusted to him. His conduct and acts would be matters *en pais* nowhere appearing from any record or return, and could only be brought to the notice of the court by a rule or motion, or by a proceeding on the equity side of the court.

We regard this case as so circumstanced that it does not fall within the rule above stated. It would be very hard to deprive a party of his remedy by motion, when no return has been made to the writ, and the party affected by it is wholly without notice. There was in fact no return of the writ until during the term in which this motion was made. The filing of the writ without any endorsement upon it, showing the manner in which it was executed, is no return. During the term at which the return was in fact filed, this motion was made. As the court lent its aid in permitting a return then to be made, by which it appeared for the first time that the writ had been executed, the incidental power of quashing that return for irregularity in the proceedings of the officer, followed as a consequence.

Nelson v. Brown.

Parties can not complain, with any show of reason, if courts narrowly scan proceedings by which an estate worth $4000 has been sacrificed by its officers for nine dollars. The bare statement of the proposition is enough to show that there must have been some wrong somewhere. There is no innocent purchaser here. The plaintiff in the execution becomes the purchaser at the sale for his own benefit; is present and privy to all that transpires. Under such circumstances, he is a purchaser with notice in fact, and is affected by the irregularities which occurred. We do not maintain that mere inadequacy of price is sufficient to set aside a sheriff's sale. But where there is a gross inadequacy of price, courts will require that there be a strict regularity in the proceedings. The irregularities attending the sale in question were such that it must be set aside.

There is one strong circumstance in this case, which can not but strike every one who considers it. It does not appear that the defendant in the execution was privy to its levy or to the sale which took place under it. When a man's homestead is sold under an execution, without any notice on his part, there is generally something wrong. Officers of the law should so conduct themselves as to avoid such results. There is nothing in the case which shows that it was the defendant's fault that he was ignorant of the levy. The fact stated by the deputy sheriff, on his examination in court, that the land sold for twelve dollars, while it appears from his return that it only brought nine dollars, is a circumstance sufficient, in a case like this, to awaken suspicion. But the manner in which this occurred shows that there was an irregularity in the sale. The deputy sheriff says that one lot was sold for five dollars; that he sold the second lot described in the notice and struck it off to the plaintiff for the sum of seven dollars, or so much as the expenses of the sale, together with the clerk's fees for issuing the execution, would amount to. The plaintiff in the execution bid seven dollars on the second lot and he struck it off to him at that price, with the understanding that the amount should be increased or lessened to just the amount of the expenses of the sale, includ-

ing the clerk's fee as above. Who ever heard of such a proceeding between the sheriff and the plaintiff in an execution in selling an absent debtor's land, as is here detailed? Was such a mode of bidding at a sheriff's sale lawful? What was better calculated to inspire mistrust in the bystanders? What right had the sheriff to take an unascertained amount as the sum bid? What right had he to cry in the hearing of the attendants that the sum bid was seven dollars, when it was only four? Will it be said that the difference is too small to be noticed? But when a man's estate, worth four thousand dollars, is sold for nine dollars, is he to be told he must not stand on a few dollars? Surely, when dollars cost so dear, he is justified in cavilling for one half cent. Indeed, the whole transaction can only be explained on the supposition that the deputy sheriff and the plaintiff in the execution conceived the idea and acted on it, that they had a right to deal with the defendant's land as they pleased. The judgment will be reversed, and this court gives judgment that the rule on defendant (Nelson) be made absolute, and that the sale and all the proceedings under it, including the deed, be set aside, and for costs. Judge Ryland concurring.